## Walter Boswell, Plff. in Err., v. William B. Collins.

Mere technical error in the charge of the court below is not, where substantial justice has been done, ground for reversal.

In an action for damages for the breach of a contract to furnish cold storage for eggs, it is error to instruct the jury that by removing the eggs to the warehouse the owner of them impliedly warranted them to be sound, and that it was his duty to examine every barrel and to put the warehouseman on his guard as to their condition; but if, in view of other portions of the charge and the whole evidence, no injustice has been done the plaintiff, such an instruction is not ground for reversal.

(Argued March 25, 1887. Decided April 4, 1887.)

January Term, 1887, No. 21, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, GREEN, and CLARK, JJ. Error to Common Pleas No. 3 of Philadelphia County to review a judgment on a verdict for the defendant in an action of assumpsit. Affirmed.

The facts as they appeared at the trial were as follows:

The plaintiff, Boswell, was a produce commission merchant. In May, 1882, he bought, for the most part in the west, and carefully packed in oats, 140 barrels of eggs for the purpose of keeping them by means of ice storage until the winter months,

when they could be sold at an advance. He first stored them in an ice house, built by H. G. Harris, who had loaned him some of the money to purchase the eggs. Finding that the ice in this ice house melted very rapidly and constantly required to be renewed, the plaintiff applied to the defendant, who kept a warehouse in which he furnished what is known as cold storage. Plaintiff informed defendant that he wanted to keep the eggs during the summer, and might want to keep them until December, and that he wanted an even temperature.

The defendant said that he frequently received eggs on storage and that they had kept in a satisfactory manner, and that he would receive the eggs on cold storage at 20 cents per barrel per month, and that the warehouse would be kept at a temperature of about 52 degrees until October 1. Plaintiff accordingly had 132 barrels of the eggs carefully moved in the early morning in July, to defendant's warehouse, distant about 40 squares, and delivered them to defendant, receiving the following receipt:

No. 1106.                         Philadelphia, July 24, 1882.
Received of Walter Boswell, in warehouse 238 and 240 North Front street, 132 barrels eggs.                         W. B. Collins.

The remaining 8 barrels were taken by plaintiff to his own store and there unpacked and examined. They were found to be in good condition.

In the latter part of September defendant sent word to the plaintiff that the head of one of the barrels had fallen out. Plaintiff went to the warehouse and repacked the eggs in that barrel. The eggs in that barrel were found to be some in excellent condition, and some unsound. In November plaintiff went to the warehouse to remove some eggs and found that the temperature was high, and the eggs were ruined. Upon making inquiry he was informed that the ice had been taken off in the middle of October and that therefore for about a month the eggs had not been kept cold. Even the oats in which they were packed could not be used.

The plaintiff's evidence further showed that eggs could be kept for the length of time these were stored if kept cold, and that the average loss on such eggs was usually from 5 to 10 dozen in a barrel containing from 75 to 80 dozen. He also showed that the cost of these eggs when put in was 18 to 19 cents per

dozen and that the market value of ice house eggs in November, 1882, was 28 to 30 cents per dozen. He also showed, both by his own evidence and the evidence of the only man in his employ in October, 1882, that no notice had been received of any intention on the part of the defendant to take off the ice.

The defendant's evidence contradicted plaintiff's on two points, viz.: (1) Defendant testified that at the time he received the eggs he had told the plaintiff that his ice storage ran from the 1st of May until the 1st of October; and (2) defendant's clerk testified that in September, in obedience to instructions from his employer, he gave to a young man whom he found coming out of plaintiff's cellar a verbal notice that the ice storage would expire October 1.

The defendant also introduced expert testimony to show that in any event, even if the ice had been kept up, the eggs would have spoiled by reason of the length of time they were stored after a change from one ice house to another and that when the eggs were removed they were not fit for keeping longer, though fit for sale at once.

The court charged as follows:

This is an action to recover damages for breach of contract. The contract was one for storage. It was not a contract to keep ice in the store house at all. It was a contract to keep the temperature at 52 degrees—to give what is known as cold storage. The terms of the contract are for the jury. The length of time it was to continue becomes very important. The plaintiff avers that it was a contract to keep the goods on cold storage until December. The defendant avers that it was a contract to keep them on cold storage until October 1. This is entirely for the jury. Whatever the time may have been practically, it was the business of defendant to keep a temperature of from 52 degrees to 54 degrees. He was not bound by any obligation to have anything to do or say about the goods after the time for which he contracted.

[In a case of this kind the plaintiff must show that the eggs were in a fit and sound condition and were in such condition as to be kept at a temperature of 52 degrees. He must also establish that during the time they were stored they were injured by the act of defendant and by his act alone, because if they were injured by any other fact, such as inherent decay, etc., the defendant is not responsible.]

The plaintiff should show by evidence that the eggs were in good condition. The plaintiff has shown that three fourths of the eggs came from the west. He has said that he assorted, picked, and packed them; that they were stored until he took them out in July. [At this point it is the duty of the plaintiff to show you that Mr. Harris's ice house was a fit and proper place to store eggs and one that would keep them in as sound condition as when they were taken there. I do not recollect any evidence of that kind.]

The evidence is that they were taken away from Harris's ice house, because at the time it was not a fit place.

The plaintiff says that at the time the eggs were moved he repacked and examined some of the eggs and they were sound. He says he examined 8 barrels, or rather that he sold 8 barrels, and that he and the purchaser found them sound. Again; he says that he afterwards examined one barrel that had broken open in defendant's warehouse—critically examined it—and found the eggs sound. As to the 8 barrels, you will recollect that the witness he called said the eggs were good enough to be sold, but that he could not say that they were fit to be stored. Impliedly, he said that these goods were not in a condition to be stored. Practically, he said that they were only fit to be sold.

[The plaintiff said: "I cannot say, when I stored the eggs with Collins, whether they were sound or not." If he cannot say, how can he ask you to say on your oaths? Because, to find a verdict, you must say that at the time they were stored they were in a fit condition.]

[As to whether Harris's ice house was a proper place, you must say; and you must take into consideration the fact that the eggs were removed for want of ice.] After you have examined plaintiff's testimony, unless you are satisfied that the eggs were sound when stored, it is not necessary to inquire into the defense; you must find for defendant.

[When the plaintiff undertook to remove the goods from one storehouse to another, he impliedly warranted the eggs to be sound, and that they were to be stored in the usual course of business; and it was his duty to examine them. It was not sufficient to examine 2 or 3 barrels. He must open each barrel. It is an easy matter for a man who intends to store goods, which he impliedly warrants in good condition, to examine them. When a man makes a contract with another, it is his duty to put that

other on his guard, and to put him in possession of all the facts with reference to the subject matter necessary to understand the subject matter.    If the jury find that the previous storage of the eggs was a material fact, it was the duty of the plaintiff to notify defendant that the eggs had previously been stored, because it may well be that defendant would not have undertaken the storage if he had known that fact.]    (Fifth assignment of error.)

I have already alluded to the fact that the witness Liebig says that he will not swear that the eggs were in fit condition to store, and if you believe that witness, the evidence as to the soundness of the eggs fails.  As to Harris's ice house, you have the evidence of a neighbor that while the eggs were stored there was no ice there.    Again, you have the evidence that the eggs were removed in July, and carried 45 squares.    As to the effect of this, you must depend upon the evidence of persons who have had experience.    You have first the testimony of Dr. Formad, and he tells you any egg shaken begins to be diseased, and the more you shake the egg, the more likely it is to spoil and become damaged.    The testimony substantially was that the shaking of eggs breeds disease, and you may soon expect decay afterwards.

One or two of the experts said that a temperature of 52 or 54 degrees is not cold enough to keep eggs, and that a removal of the eggs necessarily produces sweating.    [If the testimony of defendant satisfies you that these goods were subject to any conditions that would produce decay within the time agreed upon the plaintiff cannot recover.]

The defense is that at the expiration of the time during which defendant claims he was to keep the eggs, he gave notice that he would not replenish the ice.    It is alleged by the plaintiff that he did not get the notice.    If the defense rests on the notice, it is the business of defendant to make it clear.    The evidence is that the notice was given at the place of business of the plaintiff. Defendant went there and found no one there, and gave to a workman coming out of the vault; and the evidence is that next day someone came to do just what the notice called upon him to do.

The defendant produced a witness, not interested except that he is in the employ of defendant, and he says:  "I saw that barrel repacked; and the eggs were not examined, and the eggs

broken gave evidence of being unsound." If you believe that witness, the evidence on which plaintiff relies, that the eggs in the barrel were sound, fails. In considering the evidence, you will most readily give credence to the man who is frank and honest, but not to the man, who, in making a contract, reserves important information.

[Plaintiff must establish that the goods were sound and fit to be kept, and that a temperature of 52 degrees was such a temperature as would keep sound goods in a sound condition, and that the damage arose solely from the act of defendant; and if the damage could have arisen in any other way, either from the fact that the eggs came from the West or were hauled from one store house to another, plaintiff cannot recover.]

The plaintiff submitted the following points:

1. "If the defendant received goods on cold storage and subsequently allowed the ice in his warehouse to become exhausted, whereby the plaintiff's goods were injured, defendant is liable for the loss."

*Ans.* "The plaintiff's first point is affirmed, subject to the comments I have already made."

2. "Even if plaintiff failed to remove the eggs at the expiration of the time for which they were stored or after notice to remove, it was still the duty of defendant to keep them in the usual and ordinary method of keeping such goods until they could be sold; and if, instead of this, he kept them in a temperature at which they were certain to be destroyed, he is liable for their loss."

*Ans.* "Refused."

3. "If the natural and probable result of defendant's omission to renew the ice in the store house was an injury to plaintiff's goods, and such an injury did result, the burden is on defendant to show that the injury was not caused by the omission to renew the ice, but by other causes."

*Ans.* "The plaintiff's third point is affirmed if the jury finds that the eggs were sound when stored, and not injured by other means."

Verdict and judgment were for the defendant. The assignments of error specified the portions of the charge inclosed in brackets, and the answers to the plaintiff's points.

*Frank P. Prichard,* for plaintiff in error.—It is manifestly

impossible for the owner to prove that the loss was occasioned solely by the warehouseman's negligence, or that no other cause could have caused the loss. To carry this ruling out to its logical conclusion, no owner of goods could recover from a warehouseman who destroyed them, unless he showed that it was impossible for the goods to have been destroyed by an accidental fire or flood, or that there were no conditions to which the goods were subjected, such as defective packing, etc., which might have contributed to the injury.

It is not sufficient for the defendant to show that other causes could have caused the loss, or even that other causes not within the plaintiff's control had actually contributed, unless he also shows the extent of the loss actually caused by such contribution at the time he committed the act complained of. Beatty v. Gilmore, 16 Pa. 463–468, 55 Am. Dec. 514.

He who avers a fact in excuse of his own misfeasance must prove it.

To say that the very fact which increases the danger shall protect him who was the author of it, by rendering the necessary proof difficult, or cutting it off altogether, is too unreasonable to attract the deliberate sanction of tribunals created to watch over the interests of the community.

In Powers v. Mitchell, 3 Hill, 545, goods in a warehouse were injured through the warehouseman's negligence and were subsequently destroyed in the warehouse by a flood for which the warehouseman was not responsible. It was held that he was liable for the injury caused by his negligence, notwithstanding that the goods would in any event have been totally destroyed by the flood.

It was error to instruct the jury in effect that if the owner of goods makes a contract with a warehouseman for storage he warrants the soundness of the goods and is under an obligation to state every material fact which may affect the question of damages in case the warehouseman is negligent.

In considering the charge it must be remembered that the defendant's contract was not to keep the eggs sound, but to keep them on "cold storage;" and the breach alleged is not the failure to preserve, but the failure to furnish cold storage, whereby they were lost. So long as defendant kept his contract, the plaintiff took the risks of injury from decay or like causes. As the goods were, therefore, to be at plaintiff's risk, so far as ordinary decay

was concerned, he was not bound to examine them at all. In any event, he would not have been obliged to increase the risk of decay by opening every barrel. He was under no duty to defendant to examine the goods, nor did he warrant their soundness. Nor was the fact of the previous storage of the eggs a material fact, so long as defendant kept his contract.

*George S. Graham,* for defendant in error.—It is certainly true that when plaintiff brought his eggs to plaintiff's warehouse to be stored, he impliedly warranted them to be sound. This was an essential element of the contract, and especially so when the eggs were concealed from view, and not subject to inspection by defendant.

The damage to be recovered must always be the natural and proximate consequence of the act complained of. Sedgw. Damages, 3d ed. 65.

It is an ancient and universal rule, resting upon obvious reason and justice, that a wrong doer shall be held responsible for the proximate, and not the remote, consequence of his actions. 2 Parsons, Contr. 455; Jones v. Gilmore, 91 Pa. 313.

Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may be fairly considered as arising naturally from such breach, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it. Jones v. Gilmore, 91 Pa. 313.

The damage alleged is the decay of the eggs. The plaintiff must connect the condition of the eggs with the act of the defendant, and show satisfactorily on his part that the condition is the result of defendant's act.

To do this it became absolutely necessary to establish that these eggs were good and fresh, and that while in his possession he kept them in such a way as to properly preserve them; hence, the inquiry into the conditions in which the eggs were kept in plaintiff's own ice house became material; and the concealment of the true history of the eggs was an element of bad faith.

PER CURIAM:

There is technical error in that portion of the charge covered by the fifth assignment of error, but in view of other portions of

the charge and the whole evidence, no injustice was done to the plaintiff. No error is found sufficient to demand a reversal of the judgment; substantial justice was done by the verdict and judgment thereon.

Judgment affirmed.